UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROADWALL MANAGEMENT CORP. *et al.*, | |
| Plaintiffs, | 21 Civ. 10247 (PAE) |
| -v- | OPINION & ORDER |
| AFFILIATED FM INSURANCE CO., | |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Broadwall Management Corp. ("Broadwall") and its affiliated and subsidiary entities bring a claim of breach of contract against Affiliated FM Insurance Co. ("Affiliated"), challenging Affiliated's denial of coverage under a property insurance policy (the "Policy") for, *inter alia*, lost rental income during the COVID-19 pandemic.

Affiliated now moves to dismiss under (1) Rule 12(b)(1), challenging the contractual standing of five plaintiffs to sue under the Policy, and (2) Rule 12(b)(6), arguing that plaintiffs' losses are not covered because COVID-19 did not cause "physical loss or damage" to any insured property, and because no civil authority order restricted access to any covered premises on account of the "actual not suspected presence" there of COVID-19.

For the reasons that follow, the Court denies Affiliated's 12(b)(1) motion, grants its 12(b)(6) motion, and denies plaintiffs leave to replead.

## I.       Background

### A.       Factual Background[1]

#### 1.       The Parties and Other Relevant Entities

Broadwall is a New York corporation with its principal place of business in New York.

AC ¶ 11.  It is the managing agent of the remaining plaintiffs,[2] namely: CP Associates, LLC, *id.*

¶ 12,[i] Nassau Mall Plaza Associates LLC, *id.* ¶ 13,[ii] 3601 Turnpike Associates LLC, *id.* ¶ 14,[iii]

250 Park, LLC, *id.* ¶ 15,[iv] 488 Madison Avenue Associates LLC, *id.* ¶ 16,[v] 257 Park Avenue

South Associates, LLC, *id.* ¶ 17,[vi] 257 Park Avenue Associates, LLC, *id.* ¶ 18,[vii] 257 Park

Avenue South Fee Owner, LLC, *id.* ¶ 19,[viii] 370 Seventh Avenue Associates, LLC, *id.* ¶ 20,[ix] 370

Seventh Avenue Fee Owner, LLC, *id.* ¶ 21,[x] Seven Penn Associates, *id.* ¶ 22,[xi] 10 South LaSalle

Owner, LLC, *id.* ¶ 23,[xii] Madison LaSalle Partners LLC, *id.* ¶ 24,[xiii] Fulton Retail, LLC, *id.* ¶

25,[xiv] Fulton Green Owner, LLC, *id.* ¶ 26,[xv] Nakash 645 North Michigan, LLC, *id.* ¶ 27,[xvi] 645

North Michigan LLC, *id.* ¶ 28,[xvii] 730 Franklin Building Owner, LLC, *id.* ¶ 29,[xviii] North

---

[1] This factual account draws from the Amended Complaint, Dkt. 22 ("AC"), and two documents incorporated into the AC by reference: the Policy, Dkt. 27-2, and New York City's Emergency Executive Order No. 100, dated March 16, 2020.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  For the purpose of resolving the motion to dismiss under Rule 12(b)(1), the Court presumes all well-pled facts to be true, but analyzes those facts under a preponderance of the evidence standard.  *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

[2] Because subject matter jurisdiction here is based on diversity jurisdiction, the Court sets forth the citizenship of each plaintiff in detail in the endnotes to this decision.  Complete diversity among the parties exists because Affiliated is a citizen of Rhode Island and no plaintiff (or member of a plaintiff) is.

Sheffield Associates, LLC, *id.* ¶ 30,[xix] 1151 Third Avenue Associates, LLC, *id.* ¶ 31,[xx] RP Feil

57, LLC, *id.* ¶ 32,[xxi] RP/Feil 57 Mezz, LLC, *id.* ¶ 33,[xxii] and P200 Payroll LLC, *id.* ¶ 34.[xxiii]

Defendant Affiliated FM Insurance Company is a Rhode Island corporation with its

principal place of business in Rhode Island. *Id.* ¶ 35. Because none of the plaintiffs or plaintiffs'

members is a Rhode Island citizen, there is complete diversity between the parties.

All plaintiffs other than Broadwall are commercial landlords that lease their properties to

businesses such as stores, gyms, and restaurants. *Id.* ¶¶ 86–87. Each holds interests in the

insured properties at issue here (the "Affected Properties"), *id.* ¶¶ 89, 92. The Affected

Properties, and their respective interest holders, are as follows:

| Property Name | Interest Holder (*see* Dkt. 27-2 at 26–27)[3] |
|---|---|
| 10 South La Salle St., Chicago, IL 60603 | 10 South LaSalle Owner LLC; Madison LaSalle Partners LLC |
| 645 North Michigan Ave., Chicago, IL 60611 | 645 North Michigan LLC; Nakash 645 North Michigan LLC |
| 362–378 7th Ave. a/k/a Penn Plaza, New York, NY 10001 | 370 Seventh Avenue Associates, LLC; 370 Seventh Avenue Fee Owner, LLC; Seven Penn Associates |
| 257–265 4th Ave. a/k/a Park Ave. South, New York, NY 10014 | 257 Park Avenue Associates; 257 Park Avenue South Fee Owner, LLC |
| Nassau Mall, 3601 Hempstead Turnpike, Levittown, NY 11756 | Nassau Mall Plaza Associates LLC; 3601 Turnpike Associates |
| Concourse Plaza, 200–238 East 161st St., Bronx, NY 10451 | CP Associates LLC |
| 200 West 57th St., New York, NY 10019 | P200 Payroll LLC RP / Feil 57, LLC |
| 488 Madison Ave. and 250 Park Ave., New York, NY 10022 | 488 Madison Avenue Associates LLC |
| 813, 821, 825 West Fulton Market, Chicago, IL 60607 | Fulton Green Owner, LLC |
| 730 North Franklin St., Chicago, IL 60654 | 730 Franklin Building Owner, LLC |
| 1151 Third Ave., New York, NY 10065 | 1151 Third Avenue Associates, LLC |

---

[3] This chart lists only those interest holders which are also named plaintiffs in this action.

| 938 North Ave., Chicago, IL 60622[4] | North Sheffield Associates, LLC |
| --- | --- |

### 1.    December 2019–March 2020: Early Spread of COVID-19

The AC begins by recounting the spread and contagious nature of the COVID-19 virus. In December 2019, the COVID-19 virus first spread in China, and from there around the world. AC ¶ 41.  On January 30, 2020, the World Health Organization declared COVID-19 an international public health emergency.  *Id.* ¶ 42.  The virus is highly contagious, in part because it travels in droplets expelled in the course of human coughs, sneezes, or speech, and can infect anyone who came into contact with those droplets either through aerial transmission or touching surfaces on which such droplets had landed.  *Id.* ¶¶ 43–44, 52–53, 58–59, 62.

The virus is, the AC pleads, a "communicable disease" in the ordinary meaning of those words.  *Id.* ¶ 54.  Compounding the virus's contagiousness are that (1) it could linger in the air for up to eight hours and survive on some surfaces for up to five days; (2) it was more resistant to cleaning than other respiratory viruses; (3) its incubation period lasted 14 days, during which infected individuals could unknowingly transmit the virus while showing no symptoms; (3) many infected individuals showed no symptoms at all; (4) there was little access to adequate testing at the time; and (5) many infected individuals failed to get tested.  *Id.* ¶¶ 44–45, 55–56, 59, 63, 66.  The virus is more likely to be transmitted indoors than outdoors.  *Id.* ¶ 51.  These virus-carrying droplets—or fomites—resting on surfaces present "a threat to human life and health."  *Id.* ¶¶ 57, 70.  In April 2020, three guests at a hotel in Manhattan's Midtown neighborhood—less than a mile from "numerous of Plaintiff's insured properties"—died of COVID-19.  *Id.* ¶ 44.

---

[4] This property and this interest holder are not listed in the Policy.  But because Affiliated does not challenge North Sheffield Associates's contractual standing, the Court will treat these pled facts as true for the purposes of resolving the instant motion to dismiss.

Plaintiffs allege that COVID-19-carrying fomites caused economic damage to its insured properties by "physically altering the surface[s] of [their] propert[ies] into a potentially deadly Coronavirus transmission device," *id.* ¶ 61, and "otherwise making it incapable of being used for its intended purpose," *id.* ¶ 65; *see also id.* ¶ 68. Individuals would contract the virus as a result of interacting with objects with which infected individuals—including asymptomatic ones—had interacted. *Id.* ¶¶ 64, 67–68. Droplets lingering in the indoor air of plaintiffs' insured premises, too, contributed to this economic loss and damage. *Id.* ¶¶ 65–68. These conditions led to the adoption of measures intended to reduce contact among people and between people and those infectious surfaces. *Id.* ¶ 67. Due to high customer traffic and the many employees, the COVID-19 virus spread to each of plaintiffs' Affected Properties. *Id.* ¶ 88.

### 2.     March 2020: States and Municipalities Issue Civil Authority Orders

In response to the pandemic's spread, states and municipalities, including New York State, New York City, Illinois, and Chicago issued civil authority orders in March 2020. *Id.* ¶¶ 6–8, 46.[5] The AC alleges that these orders were "all predicated, in part, on . . . the physical loss or damage caused by Covid-19 within enclosed, highly trafficked locations." *Id.* ¶ 47. On March 16, 2020, New York City issued its Emergency Executive Order No. 100—the only one specifically mentioned in the AC. *Id.* ¶ 48 & n.7. The order stated that it was issued "because [COVID-19] physically is causing property loss and damage." *Id.* ¶ 48. Similarly, the Centers for Disease Control and Prevention issued non-binding recommendations to improve commercial

---

[5] The AC does not specify whether those orders closed businesses such as plaintiffs' or merely restricted access to them. It does allege that the spread of COVID-19 by aerial and surface-to-touch transmission required measures to reduce interactions between people and with surfaces. AC ¶ 67.

buildings' ventilation and air conditioning to reduce airborne concentration of fomites before reopening. *Id.* ¶ 69.

### 3. April 2020: The Insurance Policy and Defendant's Refusal to Cover

On or before May 15, 2019, plaintiffs entered into an insurance policy bearing the number KM 955. It covered plaintiffs' properties for, *inter alia*, physical loss or damage, and loss of income due to business interruptions. *Id.* ¶¶ 72–73. The Policy's effective term ran from May 15, 2019 to May 15, 2020. *Id.* ¶ 74. It issued on May 20, 2019. Dkt. 27-2 (the "Policy") at 16.[6]

The Policy covered the insured properties "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy." *Id.* ¶ 76 (quoting Policy at 19). In addition to covering physical damage in the specified locations, the Policy covered losses from "Business Interruptions." The three relevant provisions, all in section E of the Policy ("Business Interruption Coverage Extensions"), are:

#### 2. Civil or Military Authority

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability if an order of civil or military authority prohibits access to a location provided such order is the direct result of physical damage of the type insured at a location or within five (5) statute miles of it.

#### 3. Communicable Disease – Business Interruption

If a described location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such described location is limited, restricted or prohibited by:

> a) An order of an authorized governmental agency regulating such presence of communicable disease; or

---

[6] Because the Policy's pages are not consistently numbered, this opinion refers to the ECF-stamped page numbers of Dkt. 27-2.

> b) A decision of an Officer of the Insured as a result of such presence of communicable disease,

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability at such described location with such presence of communicable disease.

## 8.  Ingress/Egress

This Policy covers the Business Interruption Coverage loss incurred by the Insured due to the necessary interruption of the Insured's business when ingress to or egress from a described location(s) is physically prevented, either partially or totally, as a direct result of physical loss or damage of the type insured to property of the type insured whether or not at a described location.

Policy at 62–65.

On April 15, 2020, and later through a questionnaire, Affiliated requested information from plaintiffs as to specific, verified cases of COVID-19 on plaintiffs' premises.  AC ¶ 80. Plaintiffs timely responded to each such request.  *Id.* ¶ 81.

On or about June 16, 2020, plaintiffs submitted a sworn proof-in-loss statement, claiming $15,525,660 in damages.  *Id.* ¶ 82.  On August 21, 2020, Affiliated, in correspondence with plaintiffs, took the position that it could "neither accept nor reject" plaintiffs' proof-in-loss statement.  *Id.* ¶ 84.  Affiliated refused coverage.  *Id.*

### 4.  The Affected Properties

Plaintiffs allege that the following locations (the "Affected Properties") suffered economic loss from the presence of COVID-19 on their premises:

| Address | Type of Building | Businesses Housed | AC Cite |
|---|---|---|---|
| 10 South La Salle St., Chicago, IL 60603 | 37-floor tower and commercial center | Paper Source, Chipotle Mexican Grill, J&J Poke Bar, Fifth Third Bank | ¶ 89(a) |
| 645 North Michigan Ave., Chicago, IL 60611 | Mid-rise office building, public-facing commercial space on ground floor | TGI Fridays, Tumi | ¶ 89(b) |

7

| 362–378 7th Ave., New York, NY 10001 | 17-story office building, public-facing commercial space on ground floor | Starbucks, Sweetgreen, Sticky Fingers | ¶ 89(c) |
|---|---|---|---|
| 257–265 4th Ave., New York, NY 10014 | Mid-rise office building, public-facing commercial space on ground floor | Blue Bottle Coffee, FedEx Store | ¶ 89(d) |
| 3601 Hempstead Turnpike, Levittown, NY 11756 | Outdoor shopping center | TGI Friday's, Kohl's Department Store, PetSmart, Party City, GameStop, Sally Beauty Supply | ¶ 89(e) |
| 200–238 East 161st St., Bronx, NY 10451 | Outdoor shopping center | Modell's Sporting Goods, KNAI Entertainment, Kidstown Retail Apparel, 161 Chicken, Hibachi Buffet | ¶ 89(f) |
| 200 West 57th St., New York, NY 10019 | 42-story office building, public-facing retail and commercial space on ground floor | FedEx Store, 57th Bakery, Kenji Murase Salon | ¶ 89(g) |
| 488 Madison Ave. and 250 Park Ave., New York, NY 10022 | 25-story office building, public-facing retail and commercial space on ground floor | All Market Foods and Metro PCS, Naya Express, Bonobos Apparel, Indochino Apparel | ¶ 89(h) |
| 813, 821, 825 West Fulton Market, Chicago, IL 60607 | Fulton Market retail space | Urban Outfitters, Sweetgreen, La Colombe Coffee, Casper Sleep Retail | ¶ 89(i) |
| 730 North Franklin St., Chicago, IL 60654 | 7-story commercial retail space | Artisan Pilates, Midwest Sports, Gallery Victor Armendariz | ¶ 89(j) |
| 1151 Third Ave., New York, NY 10065 | 5-story commercial retail space | Vineyard Vines Retail, Flywheel Sports | ¶ 89(k) |
| 938 North Ave., Chicago, IL 60622 | Indoor-outdoor shopping center, commercial retail space | Lululemon, Sephora | ¶ 89(l) |

## B.    Procedural Background

On October 10, 2021, plaintiffs filed the original complaint in New York State Supreme

Court, New York County.  Dkt. 1-1.  On November 5, 2021, service was completed.  Dkt. 1 ¶ 45.

On December 2, 2021, Affiliated timely removed this case to this Court based on diversity

jurisdiction.  Dkt. 1.  On February 15, 2022, after several extensions, plaintiffs filed the AC,

properly alleging complete diversity of citizenship among the parties.  Dkt. 22 ("AC"); *see also*

Dkts. 9, 11, 12, 16, 18, 21, 23.

On March 1, 2022, Affiliated moved to dismiss.  It moved both under Rules 12(b)(1),

challenging the standing of certain plaintiffs to sue, and Rule 12(b)(6), asserting a failure to state

a claim.  It filed a memorandum of law, Dkt. 28 ("Def. Mem."), an affirmation, and exhibits in

support, Dkts. 26–27.  On March 9, 2022, the Court stayed discovery pending the resolution of

the motion to dismiss.  Dkt. 34.  On April 8, 2022, plaintiffs opposed the motion.  Dkt. 37 ("Pl.

Opp.").  On April 27, 2022, Affiliated replied.  Dkt. 38 ("Reply").

## II.     Applicable Legal Standards

### A.     Applicable Legal Standards Under Rule 12(b)(1)

To survive a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule

12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a

preponderance of the evidence."  *McGowan v. United States*, 825 F.3d 118, 125–26 (2d Cir.

2016) (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  In

considering a motion to dismiss for lack of standing under Rule 12(b)(1), a court must accept as

true the material factual allegations contained in the complaint, but a court is "not to draw

inferences from the complaint favorable to plaintiffs."  *See J.S. ex rel. N.S. v. Attica Cent. Schs.*,

386 F.3d 107, 110 (2d Cir. 2004); *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)

("Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it." (citation omitted)).  Accordingly, in

resolving a motion to dismiss for lack of standing, "general factual allegations of injury resulting

from the defendant's conduct may suffice," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

(1992), but "a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to

draw unwarranted inferences in order to find standing," *Baur v. Veneman*, 352 F.3d 625, 637 (2d

Cir. 2003). A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [a court] may not rely on conclusory or hearsay statements contained in the affidavits." *Attica Cent. Schs.*, 386 F.3d at 110.

### B. Applicable Legal Standards Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco*, 622 F.3d at 111). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint," so long as there exists "no dispute . . . regarding the authenticity or accuracy of the document" and "there exist no material disputed issues of fact regarding the relevance of the document." *Id.*

10

(quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006), *DiFolco*, 622 F.3d at 111,

*Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)) (brackets in *AECOM*).

## III.    Discussion

### A.    Rule 12(b)(1): Affiliated's Challenge to the Standing of Certain Plaintiffs

Affiliated does not challenge the Court's subject-matter jurisdiction.[7]  The substantial

documentation that the Court commissioned in order to confirm that defendants' removal on the

basis of diversity jurisdiction was proper in fact so confirms.

Instead, Affiliates challenges the contractual standing to sue of four plaintiffs—250 Park

LLC, 257 Park Avenue South Associates LLC, Fulton Retail LLC, and RP/Feil 57 Mezz LLC

(collectively, the "Challenged Plaintiffs")—on the ground that they are not explicitly identified

as named insureds to the Policy.  Def. Mem. at 24–25; *see* Policy at 18 (listing, *inter alia*,

Broadwall as a named insured), 26–27 (listing as "Additional Named Insureds" all named

plaintiffs in this action except the Challenged Plaintiffs and North Sheffield Associates, whose

standing Affiliated has not challenged).  Affiliated's argument is based on the New York law

principle that "[o]nly the policy owner has standing to sue based on an insurance policy." *Pike v.

N.Y. Life Ins. Co.*, 72 A.D.3d 1043, 1049 (N.Y. App. Div. 2010).  "A non-party to a contract

governed by New York law lacks standing to enforce the agreement in the absence of terms that

clearly evidence an intent to permit enforcement by the third party in question." *Premium

Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (cleaned up).

---

[7] The Second Circuit has distinguished between constitutional standing under Article III—
implicating the district court's subject-matter jurisdiction—and contractual standing, which
"speaks to a party's right to relief for breach of contract." *SM Kids, LLC v. Google LLC*, 963
F.3d 206, 211 (2d Cir. 2020); *see also id.* at 212 ("Constitutional standing . . . [is] not the
threshold inquiry when a litigant's contention was that his opponents [are] not parties to an
agreement." (citing *Perry v. Thomas*, 482 U.S. 483, 491–92 (1987)).  The latter is at issue here.

In fact, the factual averments in the AC, read in conjunction with the Policy's "Named Insured" clause, plausibly plead that the Challenged Plaintiffs are named insureds.    That clause reads:

> Broadwall Management Corp; Jeffrey Management; The Feil Organization; Broadwall Consulting Services, and *its wholly or majority owned subsidiaries and any interest which may now exist or hereinafter be created or acquired which are owned, controlled or operated by any one or more of those named insureds.*

Policy at 18 (emphasis added).  Although the clause is not a model of clarity, the operative issue under it appears to be whether the Challenged Plaintiffs are "subsidiaries" or "interests" "owned, controlled, or operated" by (as relevant here) named insured Broadwall.[8]  The AC so pleads.  It pleads that Broadwall is the managing agent of the Affected Properties, and operates all the other named plaintiffs, including the Challenged Plaintiffs, which in turn are pled to be property owners that lease their premises to businesses.  AC ¶¶ 1–2.  And, consistent with the Named Insured clause, the Affected Properties are identified as insurable interests under the Policy, *see* Policy at 26–27, and, as pled, "now exist."  The AC also pleads that these plaintiffs "have an

---

[8] Other district courts to have confronted a contractual standing challenge involving this language have found or assumed the same. *See, e.g., Warehouse Invs., L.L.C. v. Affiliated FM Ins. Co.*, No. 21 Civ. 174 (JAJ) (HCA), 2021 WL 6752241, at *6 (S.D. Iowa Aug. 23, 2021) (reasoning that the named insured clause did not require "whole or majority [corporate] ownership" of the unnamed insured by the named insured to plead standing, but that, under the "interest . . . operated" clause, "NAS's management of the Properties for [unnamed plaintiff] DDMW plausibly constituted 'operating' or 'running' DDMW's business," and thus pled contractual standing); *S. Ins. Co. v. Affiliated FM Ins. Co.*, No. 13 Civ. 263 (KS) (MTP), 2015 WL 1636711, at *1 & n.1 (S.D. Miss. Apr. 13, 2015) (holding that, "USMAA does not appear to be a named insured under the Affiliated Policy" because it was not listed as such in the Policy *and* because no "party ha[d] cited any evidence supporting the contention that USMAA is a subsidiary of the Board or that *any named insured owns, controls, or operates USMAA*." (emphasis added)), *aff'd*, 830 F.3d 337 (5th Cir. 2016).

insurable interest in each of the [Affected] Properties," AC ¶ 92.  On the pleadings, the

Challenged Plaintiffs thus have standing.[9]

### B.      Rule 12(b)(6): Affiliated's Challenge to the AC's Breach-of-Contract Claim

In light of the Policy's terms, to viably plead a breach of contract, the AC must plausibly

plead coverage under one or more of the three provisions above, to wit, the Civil or Military

Authority provision, the Communicable Disease – Business Interruption provision, or the Ingress

/ Egress Provision.  For the reasons that follow, the AC does not plead either.

### 1.      The Legal Framework

"It is well established under New York law that a policyholder bears the burden of

showing that the insurance contract covers the loss," *Morgan Stanley Grp., Inc. v. New England*

*Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000) (citing cases), while "the insurer bears the burden of

showing that an exclusion applies to exempt it from covering a claim," *MBIA Inc. v. Fed. Ins.*

*Co.*, 652 F.3d 152, 158 (2d Cir. 2011) (citation omitted).  "Under New York law, an insurance

contract is interpreted to give effect to the intent of the parties as expressed in the clear language

---

[9] The Court alternatively finds that the Challenged Plaintiffs have standing to sue as third-party
beneficiaries to the Policy.  "A party asserting rights as a third-party beneficiary must establish
(1) the existence of a valid and binding contract between other parties, (2) that the contract was
intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than
incidental, to indicate the assumption by the contracting parties of a duty to compensate him if
the benefit is lost." *Underdog Trucking, LLC, Reggie Anders v. Verizon Servs. Corp.*, No. 09
Civ. 8918 (DLC), 2010 WL 2900048, at *5 (S.D.N.Y. July 20, 2010) (citing *Madeira v.*
*Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006)).  Here, the Policy, as pled, is a
valid and binding contract between, *inter alia*, Broadwall and Affiliated.  The Policy was
intended to insure, *inter alia*, the Affected Properties.  No Challenged Plaintiff claims an
insurable interest in a property outside the Affected Property.  Broadwall, as the managing agent
of numerous property owners, had an interest in keeping their managed entities' property
interests insured.  These are sufficient "circumstances indicat[ing] that the promisee intend[ed] to
give the beneficiary the benefit of the promised performance." *Roosevelt Islanders for*
*Responsible Southtown Dev. v. Roosevelt Island Operating Corp.*, 291 A.D.2d 40, 57 (N.Y. App.
Div. 2001).

of the contract." *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 220 (2d Cir. 2021) (internal quotations and citation omitted).  "[A]mbiguities, if any, are to be resolved in the insured's favor and against the insurer.  But where the provisions of a policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." *Id.* (cleaned up) (citing *U.S. Fidelity & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1207 (N.Y. 1986)).

### 2. The Civil or Military Authority and the Ingress/Egress Provisions

The Court—like the parties—here evaluates the Civil or Military Authority and Ingress/Egress coverage provisions together.  That is because they respectively require that there was "physical damage of the type insured" or "physical loss or damage of the type insured"— terms which the case law has treated as synonymous.  Specifically, the Civil or Military Authority provision covers business interruption loss from an "order of civil or military authority [that] prohibits access to a location provided such order is the *direct* result of *physical damage* of the type insured."  Policy at 62–63 (emphasis added).  And the Ingress/Egress provision covers business interruption loss "when ingress to or egress from a described location(s) is physically prevented . . . as a *direct* result of *physical loss or damage* of the type insured." *Id.* at 65 (emphasis added).

The Second Circuit has recently held that, "under New York law the terms 'direct physical loss' and 'physical damage' . . . do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property." *10012 Holdings*, 21 F.4th at 222.  And "the overwhelming weight of precedent, from New York state courts and federal district courts in this Circuit, holds that COVID-19 does not qualify as 'physical loss or damage.'" *Spirit Realty Cap., Inc. v. Westport Ins. Corp.* 568 F. Supp. 3d 470, 473 (S.D.N.Y. 2021).  *See also 6593 Weighlock*

14

*Drive, LLC v. Springhill SMC Corp.*, 147 N.Y.S.3d 386, 393 (N.Y. Sup. Ct. 2021) ("New York

state and federal courts construing similar policy language overwhelmingly have concluded that

actual physical damage to property is required to trigger coverage; loss of use alone is

insufficient." (citing further cases)); *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142

N.Y.S.3d 903, 917 (N.Y. Sup. Ct. 2021) ("[E]ven if . . . buildings throughout New York have

been contaminated by Covid-19, that would not constitute the 'direct physical loss of or damage

to' property that is required to trigger coverage."); *Stetson Real Est. LLC v. Sentinel Ins. Co.*, No.

20 Civ. 8902 (KMK), 2022 WL 2441576, at *5 (S.D.N.Y. July 5, 2022) ("The presence of the

COVID-19 virus does not amount to "physical loss or damage" to Plaintiff's property or

dependent properties."); *Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 117

(S.D.N.Y. 2021) ("[T]he [COVID-19] virus—unlike invisible fumes and chemicals—does not

'persist' and irreversibly alter the physical condition of a property."); *Sharde Harvey, DDS,*

*PLLC v. Sentinel Ins. Co.*, No. 20 Civ. 3350 (PGG) (RWL), 2021 WL 1034259, at *9 (S.D.N.Y.

Mar. 18, 2021) ("The presence of COVID-19 simply does not 'physically harm' property."

(citation omitted)); *DeMoura v. Cont'l Cas. Co.*, 523 F. Supp. 3d 314, 322 (E.D.N.Y. 2021)

("Plaintiff's interpretation of 'physical loss of or damage to property' to include the potential

presence of the virus is similarly unavailing."); *see also Poughkeepsie Waterfront Dev., LLC v.*

*Travelers Indem. Co. of Am.*, No. 20 Civ. 4890 (KMK), 2021 WL 4392304, at *1 (S.D.N.Y.

Sept. 24, 2021); *Hudson Valley Bone & Joint Surgeons, LLP v. CNA Fin. Corp.*, No. 20 Civ.

6073 (VB), 2021 WL 4340987, at *4 & n.4 (S.D.N.Y. Sept. 23, 2021) (listing cases); *WM Bang*

*LLC v. Travelers Cas. Ins. Co. of Am.*, No. 20 Civ. 4540 (KMK), 2021 WL 4150844, at *3–4

(S.D.N.Y. Sept. 13, 2021); *Rye Ridge Corp. v. The Cincinnati Ins. Co.*, No. 20 Civ. 7132 (LGS),

2021 WL 1600475, at *3 (S.D.N.Y. Apr. 23, 2021); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, 524 F. Supp. 3d 242, 248–49 (S.D.N.Y. 2021).

The principle underlying this "avalanche of authority," *Spirit Realty*, 568 F. Supp. 3d at 473, is that "while the presence of COVID-19 may render property potentially harmful to people, it does not constitute harm *to* the property itself," *100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am.*, 542 F. Supp. 3d 227, 229 (S.D.N.Y. 2021) (emphasis in original); *see also Soc. Life Magazine v. Sentinel Ins. Co.*, No. 20 Civ. 3311 (VEC), 2020 WL 2904834 (S.D.N.Y. May 14, 2020) (Teleconference: Order to Show Cause) ("[COVID-19] damages lungs. It doesn't damage printing presses."); *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, 535 F. Supp. 3d 152, 159 (W.D.N.Y. 2021) ("The building itself remains unharmed by the virus and would be safe for occupancy except for the arrival of people who bring new sources of infection.").[10]

Plaintiffs "acknowledge [this] growing body of caselaw," Pl. Opp. at 9, but seek to distinguish those cases by pointing to three features of the Policy which, they argue, support that "physical loss or damage" exists where COVID-19 germs reside on surfaces or in the air of an insured property. These, plaintiffs argue, give rise at least to ambiguity about coverage, which under New York law exists when, "viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement," a contractual term could "suggest

---

[10] This application of "direct physical loss or damage" predates the COVID-19 closures. *See, e.g., Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (denying coverage for loss due to preemptive closures of premises in the run-up to Hurricane Sandy, reasoning that "the words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure" (citing leading case, *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (N.Y. 2002)).

more than one meaning." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006).

First, plaintiffs note, an "additional coverage" provision—under which plaintiffs do not claim coverage here—bears the header, "Communicable Disease – Property Damage." Policy at 45. The term "Property Damage," plaintiffs note, is not defined in the Policy, but, they argue, in light of this provision, it should be read to include "the actual not suspected presence of [COVID-19]." Pl. Opp. at 10–11. This argument can easily be set aside. The provisions at issue here do not contain the term "[p]roperty [d]amage," but instead pivot on the term "direct physical damage or loss." And, "under New York law, '[t]he use of similar but different terms in a single contract "strongly implies that the terms are to be accorded different meanings."'" *Capri Sun GmbH v. Am. Beverage Corp.*, No. 19 Civ. 1422 (PAE) (DCF), 2022 WL 976270, at *60 (S.D.N.Y. Mar. 31, 2022) (quoting *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 355 (S.D.N.Y. 2013)) (further citations omitted).

Second, plaintiffs note, the Policy covers "physical loss or damage to electronic data, programs or software, caused by the malicious introduction of machine code or instruction." Pl. Opp. at 11 (quoting Policy at 45). This provision, however, does not introduce ambiguity into the meaning of "physical loss or damage." If anything, it reinforces the construction of that term that the case law has, overwhelmingly, adopted. As these cases have reasoned, the COVID-19 virus does not physically "damage printing presses," *Soc. Life Magazine*, 2020 WL 2904834, or a building generally by sitting on its surfaces or coursing through its air. *See* citations *supra*. In contrast, a computer virus *does* damage the computer code which it attacks. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 304 (S.D.N.Y. 2000) (discussing modern "era in which the transmission of computer viruses . . . can disable systems upon which the nation

depends and in which other computer code also is capable of inflicting other harm"), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001).

Third, plaintiffs point out that the Policy insures "Non-Physical Damage" to computer systems. Pl. Opp. at 11 (quoting Policy at 63–64). That is of no moment. That other dimensions of the Policy cover non-physical damage to items other than the Affected Properties does not speak to the damage covered for the Affected Properties.

Plaintiffs finally argue that because the Policy distinguishes between "Property Damage" and "Non-Physical Damage" in connection with computer viruses but not the COVID-19 virus, the latter virus must be "a form of physical damage." Pl. Opp. at 11. That does not follow. Even if plaintiffs' premise were correct that the Policy implies that a biological virus such as COVID-19 can inflict only *one* type of damage, the interpretive issue would remain whether the presence of COVID-19 works "direct physical loss or damage" as opposed to some *other* type of damage. For the reasons cited above and in the vast tide of case authority, it does not, plaintiffs' inspired advocacy notwithstanding. *See Soc. Life Magazine*, 2020 WL 2904834 ("New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going. You get an A for effort, you get a gold star for creativity, but this is just not what's covered under these insurance policies.").

The AC does not state a claim that Affiliated breached the Policy by denying coverage under the Civil Authority or Ingress/Egress provisions.

### 3.    The Communicable Disease – Business Interruption Provision

Plaintiffs alternatively contend they are entitled to coverage under the "Communicable Disease – Business Interruption" provision. *See* Pl. Opp. at 1–2, 10–11. It requires (1) the

"actual not suspected presence of communicable disease"[11] on the affected property, and (2) that

access to such a property was "limited, restricted or prohibited by an order of an authorized

governmental agency regulating the actual not suspected presence of communicable disease."

Policy at 63. *See also Spirit Realty*, 568 F. Supp. 3d at 475–76.

> a.    *"Actual Not Suspected Presence" of COVID-19*

As the assembled case law of this District has held in evaluating similar provisions, to

plead the "actual not suspected presence" of COVID-19, a complaint must do more than make

the "general, conclusory assertion that the spread of the COVID-19 virus" damaged insured

properties by resting "on surfaces found within these properties as well as in the breathable air

circulating within [them]." *Jordache Enters., Inc. v. Affiliated FM Ins. Co.*, No 21 Civ. 5433

(RA), 2022 WL 986109, at *6 (S.D.N.Y. Mar. 31, 2022).  To plead this requirement of coverage

under such a provision, courts required allegations of confirmed instances of COVID-19 on

specific insured properties.  *See Spirit Realty*, 568 F. Supp. 3d at 475 (finding adequately pled

"the 'actual not suspected' presence of COVID-19 only as to the seven properties in New

Mexico for which the presence of COVID-19 has been confirmed").

The AC here, however, predominantly makes general allegations of surface and aerial

contamination. *See, e.g.*, AC ¶¶ 5 (the "inundation" of Affected Properties with COVID-19

caused "physical loss [of] or damage [to]" the properties), 60 (COVID-19 on surfaces and in

inside air of Affected Properties and surrounding premises), 61 ("Fomites physically alter the

surface of property into a potentially deadly Coronavirus transmission device."), 65 (presence of

COVID-19 on Affected Properties' surfaces caused physical damage to them), 67 (same).  *See*

*Jordache*, 2022 WL 986109, at *6 ("Plaintiffs do not allege the presence of COVID-19 at even

---

[11] It is undisputed that COVID-19 is a "communicable disease" as defined by the Policy. *See*
Def. Mem. at 20.

one of [their] insured locations."); *Spirit Realty*, 568 F. Supp. 3d at 475 ("[A]t most, Spirit adequately alleges the 'actual, not suspected' presence of COVID-19 only as to the seven properties in New Mexico for which 'the presence of COVID-19 has been confirmed.'" (citation omitted)).

Nor does the AC specifically allege the presence of sick employees and customers at the various loss locations.  To be sure, it pleads that, because customers and employees had been present in the properties, COVID-19 must have been "physically present in each" when the civil authority went into effect in March 2020.  AC ¶ 88.  But courts have held such pleadings too general to plead the actual presence of COVID-19.  *See, e.g.*, *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, No. 20 Civ. 10167 (SDW) (LDW), 2021 WL 1904739, at *4 n.10 (D.N.J. May 12, 2021) (complaint did not adequately so plead by alleging, without more, that "scores of people passed through [its] stores, some of them spreading COVID-19 as they went"); *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 524 F. Supp. 3d 762, 774 (S.D. Ohio) (complaint did not plausibly plead actual presence of COVID-19 on premises where it pled that "individuals on their premises exhibited symptoms 'consistent with COVID-19' but that such individuals were not tested for the disease"), *aff'd*, 17 F.4th 645 (6th Cir. 2021); *Blue Coral, LLC v. W. Bend Mut. Ins. Co.*, 533 F. Supp. 3d 279, 285 (E.D.N.C. 2021) (holding, under similar communicable disease provision, that complaint that "reli[ed] on COVID-19's ubiquity" to allege its presence on its premises, did not state a claim); *see also Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*, No. 20 Civ. 80 (KRG), 2021 WL 1061849, at *5 (W.D. Pa. Mar. 18, 2021).

The AC accordingly does not plead the first required element for coverage under the Communicable Disease – Business Interruption provision.

b.      *Basis for Civil Authority Orders' Restrictions*

Plaintiffs' claim for coverage under this provision requires pleading that a civil authority order "limited, restricted or prohibited" access to an insured location "*because* of the 'actual not suspected' presence of COVID-19 at the property." *Spirit Realty*, 568 F. Supp. 3d at 475 (emphasis added); *see also Food for Thought*, 524 F. Supp. 3d at 249–50 (holding that, to survive a motion to dismiss, plaintiff was required—and failed—to plead that civil authority orders "specifically prohibited" all access to plaintiff's premises due to COVID-19). It is not enough that a civil authority order closed plaintiffs' businesses as part of a general effort to curb the spread of COVID-19. Rather, such an order must have been issued in response to specifically confirmed COVID-19 cases on plaintiffs' properties. Failure to meet this requirement has resulted in the dismissal of coverage claims in a number of recent cases. *See, e.g., Blue Coral*, 533 F. Supp. 3d at 284 (rejecting coverage where government order did not "state that COVID-19 was present at any specific place or that it was issued due to the presence of COVID-19 at any specific place"); *Dakota Girls*, 524 F. Supp. 3d at 774 ("These [insurance] provisions contemplate an outbreak of communicable disease on the insured's premises, not an outbreak affecting the public at large.").

So, too, here. New York City's Emergency Order 100—the only one detailed in the AC—states that it was issued "because [COVID-19] physically is causing property loss and damage." AC ¶ 48. But nowhere does it mention plaintiffs' properties (or others) specifically, or any specific confirmed COVID-19 cases—on plaintiffs' properties or elsewhere.

The AC broadly refers to other civil authority orders issued by New York State, New York City, Illinois, and Chicago. *Id.* ¶¶ 6–7. But those, too, are alleged to have closed down broad categories of businesses in response to what the AC terms "widespread physical loss or damage caused by" COVID-19. *Id.* ¶ 6. That does not support a reasonable inference that such

an order closed plaintiffs' businesses *because* of confirmed COVID-19 cases on those premises. "Put another way, [plaintiffs'] properties would have been affected by the order whether or not COVID-19 had been confirmed at its locations; the orders, therefore, were not 'regulating the actual not suspected presence of communicable disease,' as required to trigger coverage under the Policy." *Spirit Realty*, 568 F. Supp. 3d at 476.

The AC does not state a claim that Affiliated breached the Policy by denying coverage under the Communicable Disease – Business Interruption provision.

> c.    *Leave to Replead*

Plaintiffs seek, in the event that the AC is dismissed, leave to file a second amended complaint that alleges specific reported cases of COVID-19 on the Affected Properties' premises. Pl. Opp. at 14 n.5. They note that in *Jordache*, such leave was granted. *See* 2022 WL 986109, at *7. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted).

For two reasons, the Court denies plaintiffs' request to, again, replead.

First, plaintiffs have not represented that they are in possession of corrective data, let alone data sufficient to correct the multiple deficiencies noted as to coverage provisions at issue. In *Jordache*, plaintiffs "represented that they had access to more data than when the initial Complaint was filed" and "would conduct additional investigations into COVID cases" if granted leave to amend. *Id.* Plaintiffs here have only vaguely indicated their intention to "add such specificity." *See* Pl. Opp. at 14 n.5. But "[a]plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."

*Clark v. Kitt*, No. 12 Civ. 8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

Second, any such attempt to amend would be futile because, for the additional fact of actual COVID-19 cases on plaintiffs' premises to support coverage under the Policy, an amended complaint would also have to allege that civil authority orders restricted access to the Affected Properties on account of reported cases on these premises. Here, there is no basis to assume that plaintiffs could remedy that shortcoming in their pleadings by identifying a civil authority order reciting confirmed COVID-19 cases specific to such premises. District courts deny leave to amend where "problems with the dismissed claims are substantive, [such that] amendment would be futile." *Roundtree v. NYC*, No. 19 Civ. 2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases). Courts have commonly declined similar bids to file successive pleadings in COVID-19 cases arising under the coverage provisions at issue. *See, e.g.*, *Spirit Realty*, 568 F. Supp. 3d at 475–76 (citing cases); *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 416, 419 (S.D.N.Y. 2021) (declining to extend *sua sponte* leave to replead on the ground that such repleading was futile where "[p]olicy cover[ed] losses when civil authorities prohibit entrance onto the covered property due to direct physical damage to neighboring properties," but "Executive Orders issued by Governor Cuomo were issued in response to the rapid spread of the COVID-19 virus, and not on account of any physical loss or damage to any specific property"); *Sharde Harvey*, 2021 WL 1034259, at *16 (finding amendment futile for similar reason); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 507 F. Supp. 3d 482, 489 (S.D.N.Y. 2020) ("Leave to amend is denied because the Policy does not provide coverage for the loss Plaintiff suffered."), *aff'd*, 21 F.4th 216 (2d Cir. 2021).

## CONCLUSION

For the foregoing reasons, the Court denies Affiliated's partial motion to dismiss under Rule 12(b)(1), but grants its motion to dismiss the AC in its entirety under Rule 12(b)(6) for failure to state a breach of contract claim.  This ruling is with prejudice.  The Court denies plaintiffs' motion to replead.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 26 and to close this case.

SO ORDERED.

*Paul A. Engelmyer*

PAUL A. ENGELMAYER
United States District Judge

Dated: August 1, 2022
    New York, New York

[i] CP Associates, LLC, a limited liability company with 2 members, has the following membership structure:

| ¶ 12(a) Concourse 161, LLC, a limited liability company with 10 members: | (i) Feil Properties, LLC, a limited liability company with 5 members: | (1) Jeffrey J. Feil, an individual, citizen of New York | |
|---|---|---|---|
| | | (2) Jaffe II Properties, LLC, a limited liability company with 6 members: | 1. Kenneth Jaffe, an individual, citizen of Florida |
| | | | 2. Allison Wilson, an individual, citizen of Massachusetts |
| | | | 3. Jonathan Goldberg 2002 Irrevocable Trust, whose trustees are citizens of Florida and Massachusetts |
| | | | 4. Ethan Chase Jaffe 2002 Irrevocable Trust, whose trustees are citizens of Florida and Massachusetts |
| | | | 5. Alexa Simone Jaffe 2002 Irrevocable Trust, whose trustees are citizens of Florida and Massachusetts |
| | | | 6. Adam Jaffe, an individual, citizen of Florida |
| | | (3) Voorhis Partners, LLC, a limited liability company with 5 members: | 1. Justin Derfner 2001 Family Trust, whose sole trustee is a citizen of New York |
| | | | 2. Justin Derfner, an individual, citizen of New York |
| | | | 3. Eric Derfner 2001 Family Trust whose sole trustee is a citizen of New York |
| | | | 4. Eric Derfner, an individual, citizen of New Jersey |
| | | | 5. Carole Feil, an individual, citizen of New York |
| | | (4) Feil Property Trust, whose sole trustee is a citizen of New York | |
| | | (5) MRBARRY-FP LLC, a limited liability company with 6 members: | 1. Marilyn Barry, an individual, citizen of Florida |
| | | | 2. Richard Barry, an individual, citizen of New York |
| | | | 3. Mitchel Barry, an individual, citizen of New York |
| | | | 4. 2011 Richard Barry Family Trust, whose sole trustee is a citizen of Florida |
| | | | 5. 2011 Mitchell Barry Family Trust, whose sole trustee is a citizen of Florida |
| | | | 6. Joanne Lewinter Trust, whose sole trustee is a citizen of New York |
| | (ii) Feil Family, LLC, a limited liability company with 3 members: | (1) Jeffrey J. Feil, an individual, citizen of New York | |
| | | (2) Greater Lakeside, LLC, a | 1. Erica Feil Lincoln, an individual, citizen of New York |

| | | limited liability company with 15 members: | 2. Joshua Feil, an individual, citizen of New York |
|---|---|---|---|
| | | | 3. Brian Feil, an individual, citizen of New York |
| | | | 4. Jeffrey J. Feil, an individual, citizen of New York |
| | | | 5. Richard Barry 2020 Irrevocable Trust, whose sole trustee is a citizen of New York |
| | | | 6. Michelle Barry 2020 Irrevocable Trust, whose sole trustee is a citizen of New York |
| | | | 7. Estate of Judith R. Jaffe, whose executor is a citizen of Florida |
| | | | 8. Carol A. Feil, an individual, citizen of New York |
| | | | 9. Adam Jaffe, an individual, citizen of Florida |
| | | | 10. Ethan Jaffe, an individual, citizen of Florida |
| | | | 11. Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra.* |
| | | | 12. 2010 Mitchell Barry Family Trust, whose sole trustee is a citizen of New York |
| | | | 13. 2010 Richard Barry Family Trust, whose sole trustee is a citizen of New York |
| | | | 14. Eric Derfner 2001 Family Trust, whose sole trustee is a citizen of New York |
| | | | 15. Justin Derfner 2001 Trust, whose sole trustee is a citizen of New York |
| | | (3) Feil Properties, LLC, whose membership is detailed under ¶ 12(a)(i) *supra.* | |
| | (iii) Jeffrey J. Feil, an individual, citizen of New York | | |
| | (iv) Andrew Ratner, an individual, citizen of New York | | |
| | (v) Brian Palumbo, an individual, citizen of New York | | |
| | (vi) Gail Gutnick Creamer, an individual, citizen of New York | | |
| | (vii) Diane Mueller, an individual, citizen of New York | | |
| | (viii) Randall Briskin, an individual, citizen of New York | | |
| | | (1) Susan Anderson, an | |

| | (ix) The Anderson Kids Trust, with 2 trustees: | individual, citizen of New York | |
|---|---|---|---|
| | | (2) Michael Boswick, an individual, citizen of New York | |
| | (x) Jeffrey Feil Realty, LLC, a limited liability company with 3 members: | (1) Erika Feil Lincoln Trust, a trust with 2 trustees: | 1. Eileen Feil, an individual, citizen of New York |
| | | | 2. Jonathan Estreich, an individual, citizen of New York |
| | | (2) Brian Feil Trust, a trust with 2 trustees: | 1. Eileen Feil, an individual, citizen of New York |
| | | | 2. Jonathan Estreich, an individual, citizen of New York |
| | | (3) Joshua Feil Trust, a trust with 2 trustees: | 1. Eileen Feil, an individual, citizen of New York |
| | | | 2. Jonathan Estreich, an individual, citizen of New York |
| ¶ 12(b) Kimko Concourse, Inc., a New York corporation with its principal place of business in New York | | | |

[ii] Nassau Mall Plaza Associates LLC, a limited liability company with 4 members, has the following membership structure:

| ¶ 13(a) Jeffrey Feil, an individual, a citizen of New York | | |
|---|---|---|
| ¶ 13(b) Jeffrey Feil Realty LLC, whose membership is detailed under ¶ 12(a)(x), *supra*. | | |
| ¶ 13(c) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*. | | |
| ¶13(d) CHI Retail Associates, LLC, a limited liability company with 3 members: | (i) Jonathan P. Rosen, an individual, a citizen of New York | |
| | (ii) 4069 Rosen Associates LLC, a limited liability company with 4 members: | (1) Adam Rosen, an individual, a citizen of New York |
| | | (2) Estate of Mariam N. Rosen, an individual, a citizen of New York, managed by Jonathan Rosen |
| | | (3) Jeanette Rosen, an individual, a citizen of New York |
| | | (4) Sarah E. Rosen, an individual, a citizen of New York |

| | (iii) Abner Rosen Foundation, a not-for-profit entity existing under the laws of Delaware and with its principal place of business in New York | |
|---|---|---|

[iii] 3601 Turnpike Associates LLC is a limited liability company with 3 members: (a) Jeffrey Feil, an individual, citizen of New York; (b) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*; and (c) Thomas Lyon, an individual, citizen of Florida.

[iv] 250 Park, LLC, a limited liability company with 11 members, has the following membership structure:

| | |
|---|---|
| ¶ 15(a) Greater Lakeside, LLC, whose membership is detailed under ¶ 12(a)(ii)(2), *supra*. | |
| ¶ 15(b) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*. | |
| ¶ 15(c) Seven Penn Associates Partnership, a partnership consisting of 2 members: | (i) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*. |
| | (ii) Feil Family LLC, whose membership is detailed under ¶ 12(a)(i)(4), *supra*. |
| ¶ 15(d) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*. | |
| ¶ 15(e) MBB Family LLC, a limited liability company with 4 members: | (i) Scott Bernstein, an individual, a citizen of New York |
| | (ii) Lori Bernstein, an individual, a citizen of New York |
| | (iii) Nathan Bernstein, an individual, a citizen of New York |
| | (iv) Paul Meyer, an individual, a citizen of Georgia |
| ¶ 15(f) SLN Associates, LL, a limited liability company with 3 members: | (i) Scott Bernstein, an individual, a citizen of New York |
| | (ii) Nathan Bernstein, an individual, a citizen of New York |
| | (iii) Lori Bernstein, an individual, a citizen of New York |
| ¶ 15(g) Ratner Family Trust, whose 2 trustees are both citizens of New York | |
| ¶ 15(h) Eileen Katz 2019 Irrevocable Trust, whose sole trustee is a citizen of New York | |
| ¶ 15(i) Jon Estreich, an individual, a citizen of New York | |
| ¶ 15(j) Deborah Bernstein, an individual, a citizen of New York | |
| ¶ 15(k) Anderson Kids Trust, whose citizenship is detailed under ¶ 12(a)(ix), *supra*. | |

[v] 488 Madison Avenue Associates LLC, a/k/a 488 Sub-Tenants Association is a limited liability company with 3 members: (a) Robert Burton Schecter 2001 Family Trust, whose sole trustee is a

citizen of New York; (b) Feil Family LLC, whose membership is detailed at ¶ 12(a)(ii), *supra*; and (c) Robert E. Howard Trust, whose sole trustee is a citizen of Florida.

[vi] 257 Park Avenue South Associates, LLC, is a limited liability company with 257 Park Avenue Associates, LLC as its sole member.  257 Park Avenue Associates, LLC, in turn, is a limited liability company with 2 members: (a) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*; and (b) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*.

[vii] 257 Park Avenue Associates, LLC, in turn, is a limited liability company whose membership is detailed under ¶ 17, *supra*.

[viii] 257 Park Avenue South Fee Owner, LLC is a limited liability company with 257 Park Avenue Associates, LLC as its sole member, and whose membership is detailed under ¶ 17, *supra*.

[ix] 370 Seventh Avenue Associates, LLC is a limited liability company (the AC refers to it as a "corporation" but lays out its membership structure in accordance with an LLC, as indicated by its name) with the following membership structure:

| | | | |
|---|---|---|---|
| ¶ 20(a) DFB Limited Partnership, a limited partnership consisting of 4 members: | (i) Mandy Atkin, an individual, citizen of New York | | |
| | (ii) Norman N. Exempt Trust, whose sole trustee is a citizen of New York | | |
| | (iii) the Estate of Dorothea Blatt, whose executrix and beneficiary is a citizen of New York | | |
| | (iv) Blatt Management LLC, a limited liability company consisting of 2 members: | (1) Mindy Atkin, an individual, citizen of New York | |
| | | (2) the Estate of Dorothea Blatt, whose executrix and beneficiary is a citizen of New York | |
| ¶ 20(b) 7 Penn Associates, LLC, whose membership is detailed under ¶ 15(c), *supra*. | | | |
| ¶ 20(c) 380 Fulton St. Inc., a New York corporation with its principal place of business in New York | | | |
| ¶ 20(d) Beatrice & Samuel Seaver Foundation Trust, whose sole trustee is a citizen of Florida | | | |

| | | | |
|---|---|---|---|
| ¶ 20(e) Philip Ruth, an individual, citizen of New York | | | |
| ¶ 20(f) Perlman Family Partners, a limited liability company with 6 members: | (i) Toni Young, an individual, citizen of Georgia | | |
| | (ii) John Perlman, an individual, citizen of Georgia | | |
| | (iii) Betsy Perlman, an individual, citizen of Georgia | | |
| | (iv) Sam Perlman, an individual, citizen of Georgia | | |
| | (v) Mitchell Young, an individual, citizen of the Czech Republic | | |
| | (vi) Ann Young Saban, an individual, citizen of Israel | | |
| ¶ 20(g) BNWRL 370 Joint Partnership, LP, a limited partnership with 4 members: | (i) David Levy, an individual, citizen of New York | | |
| | (ii) Joel Mirrer, an individual, citizen of New York | | |
| | (iii) Ken Walsh, an individual, citizen of New Jersey | | |
| | (iv) The Arsenal Company, LLC, a limited liability company with 6 members: | (1) Bradford Roaman, an individual, citizen of New York | |
| | | (2) The Eileen Roaman Trust for the benefit of Oliver Roaman, whose sole trustee is a citizen of New York | |
| | | (3) The Eileen Roaman Trust for the benefit of Reese Roaman, whose sole trustee is a citizen of New York | |
| | | (4) The Roaman 2015 Family Trust, with 2 trustees: | 1. John Perlman, an individual, citizen of Georgia |
| | | | 2. David Levy, an individual, citizen of New York |

|  |  | (5) Arsenal 2015 Partners, LP, a limited partnership; and<br><br>(6) Arsenal 2015 GP, LLC, a limited liability company.<br><br>Each has the same 2 members: | 1. Arsenal 2015 Partners, a partnership consisting of (1) the Roaman 2015 Family Trust, whose citizenship is detailed under ¶ 20(g)(iv)(4); and (2) the Arsenal 2015 GP, LLC, a limited liability company whose membership is detailed under ¶ 20(g)(iv)(5)2., *infra.* |
| --- | --- | --- | --- |
|  |  |  | 2. Arsenal 2015 GP, LLC, a limited liability company with 2 members: (1) Eileen Roaman Trust for the benefit of Oliver Roaman, whose two trustees are citizens of New York; and (2) Eileen Roaman Trust for the benefit of Reese Roaman, whose two trustees are citizens of New York |
| ¶ 20(h) Toni Young, an individual, citizen of New York |  |  |  |
| ¶ 20(i) Barbara Kurtin, an individual, citizen of New York |  |  |  |
| ¶ 20(j) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra.* |  |  |  |
| ¶ 20(k) The Kurtin Family Partnership, LP, a limited partnership with 2 members: | (i) Andrew Kurtin, an individual, citizen of New York |  |  |
|  | (ii) Zachary Kurtin, an individual, citizen of New York |  |  |
| ¶ 20(l) The Ruth Family Partnership, LP, a limited partnership with 3 members: | (i) Joshua Ruth, an individual, citizen of New York |  |  |
|  | (ii) Lee Ruth, an individual, citizen of New York |  |  |
|  | (iii) Michelle Ruth, an individual, citizen of New York |  |  |
| ¶ 20(m) James Mindling, an individual, citizen of Connecticut |  |  |  |

| | | | |
|---|---|---|---|
| ¶ 20(n) John Perlman, an individual, citizen of Georgia | | | |
| ¶ 20(o) Elenore Schapiro Exempt Trust, a trust with 2 trustees: | (i) Ilene Aluma, an individual, citizen of Florida | | |
| | (ii) Stephen Lepsetler, an individual, citizen of New York | | |
| ¶ 20(p) Elenore Schapiro 2010 Trust, a trust with 2 trustees: | (i) Ilene Aluma, an individual, citizen of Florida | | |
| | (ii) Stephen Lepsetler, an individual, citizen of New York | | |
| ¶ 20(q) Joshua Ruth, an individual, citizen of New York | | | |
| ¶ 20(r) Lee Ruth, an individual, citizen of New York | | | |
| ¶ 20(s) Michelle Ruth, an individual, citizen of New York | | | |
| ¶ 20(t) Andrew Kurtin, an individual, citizen of New York | | | |
| ¶ 20(u) Zachary Kurtin, an individual, citizen of New York | | | |

[x] 370 Seventh Avenue Fee Owner, LLC is a limited liability company whose single member is 370 Seventh Avenue Fee Associates, LLC, whose membership is detailed under ¶ 20, *supra*.

[xi] Seven Penn Associates is a general partnership whose membership is detailed under ¶ 15(c), *supra*.

[xii] 10 South LaSalle Owner, LLC, is a limited liability company whose single member, 10 South LaSalle JV, LLC, is a limited liability company with 6 members:

| | | |
|---|---|---|
| ¶ 23(a) Feil Otis I LLC, a limited liability company with 2 members: | (1) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*. | |
| | (2) Feil LaSalle, LLC, a limited liability company with 6 members: | 1. Jeffrey J. Feil, an individual, citizen of New York |
| | | 2. Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*. |
| | | 3. Broadwall Investing Corp., a New York corporation with its |

| | | principal place of business in New York |
|---|---|---|
| | | 4. JDTL Realty LLC, a limited liability company with 2 members: (1) Justin Tyler Kravet Trust, whose sole trustee is a citizen of New York; and (2) Dylan Lee Kravet Trust, whose sole trustee is a citizen of New York |
| | | 5. ITTAI Realty, LLC, a limited liability company with a single member: Ben Korman an individual, a citizen of New York |
| | | 6. JRBL Realty, LLC, a limited liability company with a single member: Meir Cohen, an individual, citizen of New York |
| ¶ 23(b) Feil Otis II, LLC, a limited liability company with a single member: | (1) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*. | |
| ¶ 23(c) MIVTACHIM The Workers Social Insurance Fund, Ltd., an Israeli corporation with its principal place of business in Israel | | |
| ¶ 23(d) Mivtachim Texas 12, LP, a limited partnership with a single member: | (1) MIVTACHIM The Workers Social Insurance Fund, Ltd., whose citizenship is detailed under ¶ 23(c), *supra*. | |
| ¶ 23(e) Kerren Makefet Pension and Provident Center, an Israeli corporation with its principal place of business in Israel | | |
| ¶ 23(f) Makefet Texas 12, LP, a limited partnership with a single member: | (1) Kerren Makefet Pension and Provident Center, whose citizenship is detailed under ¶ 23(e), *supra*. | |

[xiii] Madison LaSalle Partners LLC is a limited liability company with 3 members: (a) Feil LaSalle, LLC, whose membership is detailed under ¶ 23(a), *supra*; (b) Delmar Realty Co., Inc., a New York corporation with its principal place of business in New York; and (c) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*.

[xiv] Fulton Retail, LLC is a limited liability company with 5 members: (a) Jeffrey Feil, an individual, citizen of New York; (b) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*; (c) Broadwall Investing Corp., the citizenship of which is detailed under ¶ 23(a)(3), *supra*; (d) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*; and (e) Chi Retail Associates, whose membership is detailed under ¶ 13(d), *supra*.

[xv] Fulton Green Owner, LLC is a limited liability company with a single member, Fulton Retail, LLC, whose membership is detailed under ¶ 25, *supra*.

[xvi] Nakash 645 North Michigan, LLC is a limited liability company with 16 members, all of whom are individuals and citizens of New York: (1) Joe Nakash, (2) Avi Nakash, (3) Ralph Nakash, (4) Sherene Nakash, (5) Amy Nakash, (6) Danielle Nakash, (7) Steven Nakash, (8) Mariam Nakash, (9) Shauli Nakash, (10), Ariel Nakash, (11) Miri Nakash, (12) Natanel Nakash, (13) Esther Nakash, (14) David Nakash, (15) Michelle Nakash, and (16) Lori Nakash.

[xvii] 645 North Michigan LLC, is a limited liability company with the following membership structure:

| ¶ 28(a) Feil Chicago LLC, a limited liability company with 14 members: | (i) SLR Ventures, LLC, a limited liability company with 9 members: | (1) Barbara Strauss Revocable Trust, whose sole trustee is a citizen of New York |
|---|---|---|
| | | (2) Peter Strauss, an individual, citizen of Colorado |
| | | (3) Tracey Strauss, an individual, citizen of New York |
| | | (4) Elizabeth Clyman, an individual, citizen of New York |
| | | (5)–(7) three separately constituted trusts, whose single trustee is a citizen of New York |
| | | (8) Trust for the Benefit of B. Strauss, whose sole trustee is a citizen of New York |
| | | (9) Trust for the Benefit of the Issue of B. Strauss, whose sole trustee is a citizen of New York |
| | (ii) Feil Family, LLC, whose membership is detailed at ¶ 12(a)(ii), *supra*. | |
| | (iii) Beth Meyers, an individual, citizen of New York | |
| | (iv) Susan Lerner, an individual, citizen of New York | |
| | (v) Juster Real Co., LLC, a limited liability company with a single member: | (1) Justin Derfner, an individual, citizen of New York |
| | (vi) Jeffrey Feil, an individual, citizen of New York | |
| | (vii) Anderson Kids Trust, the citizenship of which is detailed under ¶ 12(a)(ix), *supra*. | |
| | (viii) Jonathan Estreich, an individual, citizen of New York | |
| | (ix) Andrew Ratner, an individual, citizen of New York | |
| | (x) Kittyhawk Capital II, LLC, a limited liability company with 9 members, all of who: | (1) The Peter A. Cohen Revocable Trust, whose sole trustee is a citizen of New York |
| | | (2) William Cohen, an individual, citizen of New York |

| | | (3) Carolyn Cohen, an individual, citizen of New York |
| | | (4) Lauren Cohen, an individual, citizen of New York |
| | | (5) Andrew Cohen, an individual, citizen of New York |
| | | (6) Michele Cohen, an individual, citizen of New York |
| | | (7) Jonathan Cohen Trust, whose sole trustee is a citizen of New York |
| | | (8) Jeremy Zelikovic, an individual, citizen of California |
| | | (9) Zachary Zelikovic, an individual, citizen of New York |
| | (xi) Leonard Boxer, an individual, citizen of New York | |
| | (xii) M-B Partners, LLC, a limited liability company with 2 members: | (1) Michael Boxer, an individual, citizen of New York |
| | | (2) Barbara Heyman, an individual, citizen of Oklahoma |
| | (xiii) Sidney Stark Revocable Trust, whose sole trustee is a citizen of New York | |
| | (xiv) Jeffrey Solomon, an individual, citizen of New York | |
| ¶ 28(b) Partnership 2002, L.P., a limited partnership with 4 members: | (i) Lloyd Goldman, an individual, citizen of New York | |
| | (ii) Katja Goldman, an individual, citizen of New York | |
| | (iii) Dorian Goldman, an individual, citizen of New York | |
| | (iv) BLDG Associates, Inc., a New York corporation with its principal place of business in New York | |
| ¶ 28(c) Braha Michigan, LLC, a limited liability company with 7 members: | (i) David Braha, an individual, citizen of New York | |
| | (ii) Eli Braha, an individual, citizen of New York | |
| | (iii) Morris Braha, an individual, citizen of New York | |
| | (iv) Ralph Braha, an individual, citizen of New York | |
| | (v) Victor Braha, an individual, citizen of New Jersey | |
| | (vi) Samuel I Jemal, an individual, citizen of New York | |
| | (vii) Joseph I Jemal, an individual, citizen of New York | |
| ¶ 28(d) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*. | | |

[xviii] 730 Franklin Building Owner, LLC, is a limited liability company with 6 members: (a) Chi Retail Associates, LLC, whose membership is detailed under ¶ 13(d), *supra*; (b) Jeffrey J. Feil, an individual, citizen of New York; (c) Brian Feil, an individual, citizen of New York; (d) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*; (e) Broadwall Investing Corp., whose membership is detailed under ¶ 23(a)(3), *supra*; (f) Feil Properties, LLC, whose membership is detailed under ¶ 12(a)(1), *supra*.

[xix] North Sheffield Associates, LLC, is a limited liability company with 4 members: (a) Feil Properties, LLC, whose membership is detailed under ¶ 12(a)(1), *supra*; (b) Greater Lakeside, LLC, whose membership is detailed under ¶ 12(a)(ii)(2); (c) Jeffrey J. Feil, an individual, citizen of New York; and (d) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*.

[xx] 1151 Third Avenue Associates, LLC, is a limited liability company with 6 members: (a) Jeffrey J. Feil, an individual, citizen of New York; (b) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*; (c) Feil Properties, LLC, whose membership is detailed under ¶ 12(a)(1), *supra*; (d) Domus Cerebris, LLC, a limited liability company with 2 members, both citizens of New York: Jonathan Rosen and Jeanette Rosen; (e) Philip Mehler, an individual, citizen of New York; and (f) Brian Feil, an individual, citizen of New York.

[xxi] RP Feil 57, LLC, is a limited liability company whose single member is RP/Feil 57 Mezz, LLC, a limited liability company whose membership is detailed under ¶ 33, *infra*.

[xxii] RP/Feil 57 Mezz, LLC, is a limited liability company with the following membership structure:

| | | |
|---|---|---|
| ¶ 33(a) Feil New W57 Member, LLC, a limited liability company with one member: | (i) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*. | |
| ¶ 33(b) Feil 57th Buyout, LLC, a limited liability company with 3 members: | (i) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*. | |
| | (ii) Jeffrey J. Feil, an individual, citizen of New York | |
| | (iii) Feil Properties LLC, whose membership is detailed under ¶ 12(a)(i), *supra*. | |
| ¶ 33(c) Feil West 57th Street, LLC, a limited liability company with 8 members: | (i) Jeffrey J. Feil, an individual, citizen of New York | |
| | (ii) Feil Family, LLC, whose membership is detailed under ¶ 12(a)(ii), *supra*. | |
| | (iii) Feil Property Trust, whose citizenship is detailed under ¶ 12(a)(i)(4), *supra*. | |

| | (iv) BLDG Associates, Inc., whose citizenship is detailed under ¶ 28(b), *supra*. | |
| | (v) CJLM, LLC, a limited liability company with 4 members: | (1) Cecilia Estreich, an individual, citizen of New York |
| | | (2) James Estreich, an individual, citizen of New York |
| | | (3) Laura Estreich, an individual, citizen of New York |
| | | (4) Mary Estreich, an individual, citizen of Maine |
| | (vi) Brian M. Palumbo, an individual, citizen of New York | |
| | (vii) Larry Newman, an individual, citizen of Massachusetts | |
| | (viii) Randall Briskin, an individual, citizen of New York | |

[xxiii] P200 Payroll LLC is a limited liability company whose single member is Jeffrey Management Corporation, a New York corporation with its principal place of business in New York.